UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEADFAST INSURANCE
COMPANY, *as subrogor of* CHRISTIE'S
INC.,

                          Plaintiff,

                -v-

T.F. NUGENT INC., et al.,

                          Defendants.

20-CV-3959 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Steadfast Insurance Company ("Steadfast") brings suit against T.F. Nugent Inc., members

of the Nugent family (the "Nugent Family"), and NewGen Painting, Inc. ("NewGen"), alleging

negligence and breach of contract.  NewGen and the Nugent Family have moved to dismiss the

complaint for failure to state a claim.  For the reasons that follow, NewGen's motion is denied

and the Nugent Family's motion is granted.

**I.      Background**

The following facts, drawn from the second amended complaint, are presumed true for

the purpose of this motion.  (*See* Dkt. No. 37 ("SAC").)

This case revolves around a high-profile — and very expensive — piece of art:  a 1943

Pablo Picasso painting called "Le Marin" ("The Sailor").  (SAC ¶¶ 21, 29.)

In March 2018, the auction house Christie's Inc. entered into an agreement with the

online art gallery Sierra Fine Art LLC ("Sierra") to sell "Le Marin" at auction on May 15, 2018.

(SAC ¶¶ 3, 4, 21.)  A few days before the auction, on May 11, Christie's brought the painting to

one of its galleries in New York, where it was placed "on foam pads on the floor and against a

wall across the room from where it was going to be secured later that same day." (SAC ¶¶ 23, 24.)

Prior to the auction, Christie's had separately contracted with the painting company T.F. Nugent to paint some of its galleries in New York. (SAC ¶¶ 6, 22.) By unfortunate coincidence, some of that painting was scheduled to take place on May 11 in the gallery where "Le Marin" was lying on foam pads on the floor. At around 10:20 a.m. on that date, a T.F. Nugent employee prepared to enter the gallery. (SAC ¶ 25.) He was carrying a four-foot extension rod, which painters typically attach to paint rollers to reach high-up spaces. (*Id.*) Aware that he was not allowed to bring any rods or poles into the gallery, he "rested the paint roller extension rod against a narrow wall at the threshold of the entryway to the gallery" and then walked away. (*Id.*) Unsecured, the extension rod rolled off the wall and fell onto "Le Marin," penetrating the lower left quadrant of the canvas and damaging an area approximately seven inches long and two inches wide. (SAC ¶ 27.)

Following the accident, Christie's paid an art restorer $487,625 to repair the painting. (SAC ¶ 28.) When the restoration was complete, Sierra hired two independent art experts to evaluate the painting's loss in value. (SAC ¶ 29.) They concluded that "Le Marin" had originally been worth roughly $100,000,000, but that it had lost 20 percent of its value as a result of the damage. (SAC ¶¶ 29, 31.) After some negotiation, Christie's ended up paying Sierra a settlement of $18,250,000. (SAC ¶¶ 33-34.) Steadfast — subrogor of Christie's and the plaintiff in this action — reimbursed Christie's for both of these payments. (SAC ¶ 37.)

On May 21, 2020, Steadfast brought suit against T.F. Nugent and various members of the Nugent family to recover the money it paid to Christie's. (*See* Dkt. No. 1.) On June 3, 2020, Steadfast amended its complaint to include claims against NewGen, a new company alleged to

be T.F. Nugent's successor-in-interest.  (*See* Dkt. No. 7.)  T.F. Nugent has filed an answer.  (*See*

Dkt. No. 40.)  NewGen and the Nugent Family have filed motions to dismiss for failure to state a

claim under Federal Rule of Civil Procedure 12(b)(6).  (*See* Dkt. Nos. 20, 41.)

## II.    Legal Standard

A plaintiff facing a motion to dismiss under Rule 12(b)(6) must plead "enough facts to

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  A complaint need not contain "detailed factual allegations," but it must offer something

more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (internal citations omitted).  A plaintiff must plead "factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  In resolving a motion to dismiss,

the court "must accept as true all well-pled factual allegations in the complaint and draw all

reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282

(S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)).  That rule

does not apply, however, to legal conclusions. *Id.*  "Pleadings that offer only 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

(quoting *Twombly*, 550 U.S. at 555).

## III.    Discussion

Two motions to dismiss have been filed in this case, one by NewGen and one by the

Nugent Family.  (*See* Dkt. Nos. 20, 41.)  Both take issue with their inclusion in the case.  The

Court addresses each motion in turn.

### A.    NewGen

Steadfast seeks to recover damages from NewGen on the theory that NewGen is liable as

T.F. Nugent's successor-in-interest.  (SAC ¶¶ 75-86.)  Under New York law, when one company

sells or transfers all of its assets to another company, the acquiring company "generally does not become liable for the debts or liabilities of the seller/transferor." *D'Amico Dry D.A.C. v. Primera Mar. (Hellas) Ltd.*, 348 F. Supp. 3d 365, 392 (S.D.N.Y. 2018) (internal citation omitted). But New York recognizes four exceptions to that general rule: "(1) where the buyer expressly assumed the debt at issue; (2) where the transaction was undertaken to defraud creditors; (3) where the transaction constitutes a de facto merger; or (4) where the successor is a mere continuation of the predecessor." *Id.* (internal quotation marks and citation omitted). In those situations, the successor company is liable as a successor-in-interest.

Steadfast alleges that three of the four exceptions have been satisfied here. (*See* Dkt. No. 47 at 10.) In particular, Steadfast alleges that NewGen was created to defraud creditors; that there was a de facto merger between NewGen and T.F. Nugent; and that NewGen is a mere continuation of T.F. Nugent.[1] (*Id.*) NewGen argues that such allegations are conclusory. (*See* Dkt. No. 21 at 14.) But the Court — drawing all reasonable inferences in Steadfast's favor — finds that the complaint contains sufficient detail to make these claims plausible on their face. *See Twombly*, 550 U.S. at 570. Consider, for example, the claim that NewGen was created to defraud creditors. Steadfast alleges that T.F. Nugent's attorney helped the children of the company's owners incorporate NewGen after the owners "were advised that they would be held responsible for the uninsured portion of the loss" resulting from the damage to "Le Marin." (SAC ¶¶ 45, 46.) This sequence of events makes it plausible that "NewGen was incorporated and created solely to hide the business assets of Defendant T.F. Nugent, allowing Defendants to … avoid exposure for any liability for damage" to the painting. (SAC ¶ 48.)

---

[1] Although "de facto merger" and "mere continuation" are listed separately, courts have treated them "as a single exception because they are so similar." *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, No. 12 Civ. 5754, 2013 WL 1274561, at *13 (S.D.N.Y. Mar. 29, 2013).

The complaint also allows the court to "draw the reasonable inference" that NewGen is a mere continuation of T.F. Nugent.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  To determine whether a company is a mere continuation of another, courts assess four factors:  "(1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation."  *D'Amico*, 348 F. Supp. 3d at 393 (internal citation omitted).  Steadfast alleges with sufficient specificity that such factors exist here.  With respect to the first factor, for example, Steadfast alleges that NewGen's owners — Ashley and Kyle Nugent — "would eventually have become the owners of Defendant T.F. Nugent" had the incident with "Le Marin" not led them to create a new company instead.[2]  (SAC ¶ 47.)  With respect to the second factor, Steadfast alleges that T.F. Nugent "ceased operations shortly after NewGen took over T.F. Nugent's painting and wall covering business and clientele."  (SAC ¶ 82.)  And with respect to the final two factors, Steadfast alleges that NewGen assumed T.F. Nugent's contractual liabilities; that NewGen

---

[2] In its motion to dismiss, NewGen disputes that T.F. Nugent and NewGen share common ownership.  (*See* Dkt. No. 21 at 14 n.7.)  But this argument "turns on an issue of fact that is inappropriate for resolution on a motion to dismiss."  *Fed. Hous. Fin. Agency v. Deutsche Bank AG*, 903 F. Supp. 2d 285, 291 (S.D.N.Y. 2012).  At this stage, the Court accepts as true "all well-pled factual allegations in the complaint."  *Indyke*, 457 F. Supp. 3d at 282 (citing *Steginsky*, 741 F.3d at 368).  The Court also declines to convert NewGen's motion to dismiss into a motion for summary judgment, especially because the parties have not yet begun discovery.  *See Abbey v. 3F Therapeutics, Inc.*, 06 CV 409, 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009) ("Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a … motion [to dismiss], and thus complete discretion in determining whether to convert the motion to one for summary judgment." (internal citation omitted)).

employs the same painters who used to work for T.F. Nugent; and that all of NewGen's "key employees … were key employees of T.F. Nugent."  (SAC ¶¶ 49, 81-83.)

Taken together, such facts are enough to suggest that NewGen is carrying on T.F. Nugent's business under a different name, and thus that successor liability ought to apply.  As such, the Court declines to dismiss Steadfast's claims against NewGen.

### B.    The Nugent Family

Steadfast seeks to recover damages from the Nugent Family — the owners of T.F. Nugent and their offspring — under an "alter ego" theory.  In general, New York law permits individuals to form corporations "for the … purpose of avoiding personal liability."  *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979).  Courts may pierce the corporate veil — imposing personal liability on individual owners — only where necessary "to prevent fraud or to achieve equity."  *Id.* (internal citation omitted).  "[V]eil piercing is a narrow exception to the doctrine of limited liability for corporate entities."  *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 511-12 (S.D.N.Y. 2005).

To pierce the corporate veil under an alter ego theory, "a plaintiff must prove (1) that the person or entity sought to be held liable on said theory 'exercised complete domination over the corporation with respect to the transaction at issue and (2) that such domination was used to commit a fraud or wrong that injured … the party seeking to pierce the veil.'"  *Two Kids From Queens, Inc. v. J & S Kidswear, Inc.*, No. 09-3690, 2010 WL 475319, at *2 (E.D.N.Y. Feb. 8, 2010) (quoting *D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F. App'x. 195, 197 (2d Cir. 2005).

To satisfy the first prong —to show that a corporation was dominated — courts look to factors including "the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and

the like"; "inadequate capitalization"; "whether funds are put in and taken out of the corporation for personal rather than corporate purposes"; and "the amount of business discretion displayed by the allegedly dominated corporation." *Id.* at *3 (internal citation omitted).  As for the second prong, it can be "satisfied either upon a showing of fraud or upon complete control … that leads to a wrong against third parties." *Id* (internal citation omitted)*.*

Here, Steadfast has done enough to satisfy the first prong.  It is true, as the Nugent Family argues, that many of the allegations in the complaint read as conclusory — for example, the statement that "the Nugent Family disregards the corporate form of T.F. Nugent," or that the "Nugent Family dominates T.F. Nugent such that the company functions as their alter ego."  (*See* SAC ¶¶ 69, 73.)  But the fact that Steadfast's allegations "track the relevant factors for determining … alter ego status" does not necessarily make them "simply legal conclusions." *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Dykeman Carpentry, Inc.*, No. 13-CV-1508, 2014 WL 976822, at *4 (E.D.N.Y. Mar. 12, 2014).  In addition, the fact that many of the allegations are made "upon information and belief" does not render them implausible.  *Id*.  This is especially so where, as here, "the facts are peculiarly within the possession and control of the defendant." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks and citation omitted).  Ultimately, Steadfast includes enough detail to give the Nugent Family "fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citation omitted); *see also Trustees*, 2014 WL 976822, at *4-5 (finding similar allegations sufficient to meet the plausibility standard); *Trustees of Hollow Metal Trust Fund v. FHA Firedoor Corp.,* No. 12 Civ. 7069, 2013 WL 1809673, at *4 (S.D.N.Y. Apr. 30, 2013) (denying motion to dismiss where plaintiffs "summarily pleaded each of" the factors of the alter ego test).

Whether Steadfast satisfies the first prong is ultimately irrelevant, however, as it is unable to satisfy the second.  "New York law will not allow the corporate veil to be pierced in the absence of a showing that this control was used to commit wrong, fraud, or the breach of a legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights."  *Key Items, Inc. v. Ultima Diamonds, Inc.*, No. 09 Civ. 3729, 2010 WL 3291582, at \*9 (S.D.N.Y. Aug. 17, 2010) (internal citation omitted).  But there is nothing in the complaint that suggests that the Nugent Family's alleged domination of T.F. Nugent was used to commit a fraud or wrong.  Steadfast does not allege, for example, that the Nugent Family's domination of T.F. Nugent led to the incident damaging "Le Marin."  Nor is there any allegation that the Nugent Family dominated T.F. Nugent in order to perpetrate a fraud.[3]  Steadfast comes closest to pinpointing a fraud or wrong in alleging that the Nugent Family "caused T.F. Nugent to be underinsured and undercapitalized."  (SAC ¶ 72.)  But Steadfast does not explain how having an insurance policy that can cover up to $11 million — as T.F. Nugent did (SAC ¶ 41) — is evidence of underinsurance, nor is there anything to suggest that the Nugent Family intentionally kept the company underinsured to contravene Steadfast's legal rights.

Absent facts that give rise to the plausible inference that the Nugent Family dominated T.F. Nugent to commit a fraud or wrong, Steadfast cannot adequately plead a claim for alter ego liability.  Accordingly, that claim is dismissed.

---

[3] To the extent that Steadfast wants to argue that the Nugent Family used their alleged domination of T.F. Nugent to "defraud Plaintiff by transferring T.F. Nugent's business to NewGen," that allegation more appropriately falls under the successor liability claim Steadfast has brought against NewGen.  (Dkt. No. 47 at 12-13.)

**IV.    Conclusion**

For the foregoing reasons, NewGen's motion to dismiss is DENIED and the Nugent

Family's motion to dismiss is GRANTED.

NewGen is directed to answer the complaint by January 29, 2021.

The Clerk of Court is directed to close the motions at Docket Numbers 20 and 41.

SO ORDERED.

Dated: January 15, 2021
       New York, New York

_____
J. PAUL OETKEN
United States District Judge